```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
In re:                        :
                              :
TRICO MARINE SERVICES, INC.,  :   Chapter 11 (Confirmed)
et al.,                       :   Case No.: 04-17985(SMB)
                              :
            Debtors.          :
------------------------------X
STEVEN SALSBERG and GLORIA    :
SALSBERG,                     :
                              :
            Plaintiffs,       :
                              :
                              :
      - against -             :   Adv. Proc. No. 05-2313
                              :
TRICO MARINE SERVICES, INC.,  :
TRICO MARINE ASSETS, INC.,    :
and TRICO MARINE OPERATORS,   :
INC.,                         :
                              :
            Defendants.       :
------------------------------X
```

**OPINION AND ORDER GRANTING
MOTION TO DISMISS COMPLAINT**

**A P P E A R A N C E S:**

KIRKLAND & ELLIS LLP
Attorneys for Defendant
Citigroup Center
153 East 53rd Street
New York, New York 10022-4675

    Robert G. Burns, Esq.
    Robert R. Urband, Esq.
        Of Counsel


STEVEN C. SALSBERG
Plaintiff Pro Se
205 West 88th St., #2D
New York, NY 10024

LAW OFFICE OF JOSEPH P. GARLAND
Attorney for Gloria Salsberg
275 Madison Ave., 11th Floor
New York, NY 10016

    Joseph P. Garland, Esq.
        Of Counsel

**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge:**

    The plaintiffs (collectively "Salsberg") filed this adversary proceeding to revoke the confirmation order entered in these chapter 11 cases on January 21, 2005. The defendants and debtors, Trico Marine Services, Inc., Trico Marine Assets, Inc., and Trico Marine Operators, Inc. (collectively "Trico"), moved for judgment on the pleadings, FED. R. CIV. P. 12(c), and relied on extrinsic evidence, including the affidavit of Trevor Turbidy, their former chief financial officer and current chief executive officer.[1] The Court announced at oral argument that it would treat the motion for judgment on the pleadings as a motion for summary judgment. It offered Salsberg the opportunity to supplement their opposition, but they declined the invitation.

    The Court concludes, for the reasons set out below, that it

---

[1] The versions of the Turbidy affidavit filed on the Court's ECF system and delivered to chambers were not signed. Neither side mentioned the omission, and it appears to be an oversight, although Trico should cure the omission by filing one in proper form. In any event, the facts recounted in the Turbidy affidavit are independently verifiable through the examination of public filings in this Court and the SEC.

2

cannot grant relief consistent with 11 U.S.C. § 1144, and accordingly, the Complaint will be dismissed. Salsberg is granted leave to replead during the next 30 days from the date of this opinion to assert any other claim they may have based upon the facts alleged in the Complaint.

## BACKGROUND

**A.    The Bankruptcy Case**

The facts are not in dispute. Trico commenced "prepackaged" bankruptcies in this Court on December 21, 2004. At the time, Trico owed approximately $400 million, including approximately $275 million to the holders of their senior notes (the "Notes"). Under the Joint Prepackaged Plan (the "Plan"), Trico proposed to exchange the Notes for 100% of New TMS Common Stock, subject to dilution based upon the grant of certain options and warrants. The Noteholder class (Class 6) was the only impaired class entitled to vote, and voted to accept the Plan.[2] Although the Plan cancelled the old common stock and did not provide for any distributions to equity, a separate Plan Support Agreement between Trico and the Noteholders provided, inter alia, that the current TMS common shareholders would receive warrants exercisable for up to 10% of

---

[2] All other creditor classes (except Class 9, consisting of subordinated claims) were left unimpaired, and were conclusively presumed to accept the Plan. 11 U.S.C. § 1126(f). Class 9 and all classes of interests, including the common shareholders, were to receive nothing under the Plan, and were deemed to reject it. Id.

the New TMS Common Stock.  In other words, the Noteholders agreed to give a portion of their distribution to the unsecured creditors.  See In re SPM Mfg. Corp., 984 F.2d 1305 (1st Cir. 1993).

The confirmation hearing took place on January 19, 2005. Trico called one live witness, Richard NeJame, a director in Lazard Freres' restructuring advisory group.  Mr. Salsberg, who had filed an objection to confirmation, participated in the hearing and cross-examined NeJame extensively.  (See Transcript of hearing, held Jan. 19, 2005, at 63-116)(ECF Doc. # 91)(Case no. 04-17985.) In addition, Mr. Salsberg called Turbidy as a witness in his direct case.  (Id., at 118-25.)  At the conclusion of the hearing, the Court overruled Mr. Salsberg's objection, and signed the confirmation order on January 21, 2005.  (ECF Doc. # 52)(Case no. 04-17985.)

Trico emerged from chapter 11 on March 15, 2005, the effective date of the Plan.  On that day, Trico distributed 10 million shares of New TMS Common Stock to the Noteholders, and 998,868 New Warrants to the holders of old common stock which was cancelled under the Plan.  On October 24, 2005, Trico closed its underwritten public offering of an additional 4,273,500 shares of common stock at a public offering price of $24.00 a share.  Trico's common stock is publically traded through NASDAQ under the ticker symbol TRMA.

**B. This Adversary Proceeding**

Salsberg did not appeal from the confirmation order or seek a stay. Instead, they commenced this adversary proceeding on May 19, 2005, to revoke the confirmation order. The Complaint, (see ECF Doc. # 1), alleges that Turbidy lied when he testified at the confirmation hearing that Trico's fourth quarter 2004 revenue was "fairly consistent" with the projected revenue and "not materially" higher than what was depicted in the disclosure statement, and that the 2004 revenue was "consistent" with the projections. (Complaint, at ¶ 28.) In fact, Trico's actual fourth quarter 2004 revenue exceeded its projected revenue by 35%. (Id., at ¶ 26.) Furthermore, its annual revenue for 2004 exceeded its projections by 8.5%. (Id., at ¶ 27.)

Trico filed an Answer, (see ECF Doc. # 4), that denied the material allegations in the Complaint, and asserted several affirmative defenses. On November 28, 2005, Trico filed this motion to dismiss the Complaint under the doctrine of equitable mootness. As noted, it has been converted to a motion for summary judgment.

5

**DISCUSSION**

Section 1144 of the Bankruptcy Code governs revocation of an order confirming a plan. It states as follows:

> On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation shall - (1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and (2) revoke the discharge of the debtor.

Relief under § 1144 is discretionary; the Court may but need not revoke the confirmation order if it finds fraud. 8 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 1144.03[4], at 1144-5 to 1144-6 (15th ed. rev. 2005)("COLLIER"). The Court must consider all of the circumstances, and determine "whether revocation of the confirmation can or would lead to an outcome that is more equitable than leaving the order intact." 8 COLLIER ¶ 1144.03[4], at 1144-6; see In re V & M Mgmt., Inc., 215 B.R. 895, 904 (Bankr. D. Mass. 1997). As a condition to revocation, § 1144(1) requires the order to include "such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation."

The doctrine of "equitable mootness" is closely related to the ability to grant relief under § 1144. Under this doctrine, a proceeding challenging a confirmation order should be dismissed as

6

moot when, although relief could conceivably be fashioned, the implementation of the relief would be inequitable. <u>Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.</u>, 416 F.3d 136, 143 (2d Cir. 2005); <u>Official Comm. of Unsecured Creditors of LTV Aerospace and Def. Co. v. Official Committee of LTV Steel Co. (In re Chateaugay Corp.</u>), 988 F.2d 322, 325 (2d Cir. 1993).

The threshold question is whether the plan has been substantially consummated. <u>See</u> <u>Metromedia</u>, 416 F.3d at 144. Under 11 U.S.C. § 1101(2), "substantial confirmation" means the

> (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan.

Once "substantial confirmation" has occurred, it is less likely that the court will hear the challenge:

> Constitutional and equitable considerations dictate that substantial consummation will not moot an appeal if all of the following circumstances exist: (a) the court can still order some effective relief, . . . (b) such relief will not affect "the re-emergence of the debtor as a revitalized corporate entity", . . . (c) such relief will not unravel intricate transactions so as to "knock the props out from under the authorization for every transaction that has taken place" and "create an unmanageable, uncontrollable situation for the Bankruptcy Court", . . . (d) the "parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings", . . . and (e) the appellant "pursue[d] with diligence all

7

>     available remedies to obtain a stay of execution of the
>     objectionable order ... if the failure to do so creates
>     a situation rendering it inequitable to reverse the
>     orders appealed from" . . .

Frito-Lay Inc. v. LTV Steel Co. (In re Chateaugay Corp.), 10 F.3d 944, 952-53 (2d Cir. 1993)(citations omitted).

Trico seeks to dismiss the Complaint based on "equitable mootness." While "equitable mootness" is usually applied to cut off an appeal from a plan confirmation order, it has also been invoked on occasion to dismiss a complaint seeking revocation under § 1144. E.g., Chang v. Servico Inc.(In re Servico, Inc.), 161 B.R. 297, 300-01 (S.D. Fla. 1993); Almeroth v. Innovative Clinical Solutions, Ltd. (In re Innovative Clinical Solutions, Ltd.), 302 B.R. 136, 141 (Bankr. D. Del. 2003); S.N. Phelps & Co. v. Circle K Corp. (In re Circle K Corp.), 171 B.R. 666, 669 (Bankr. D. Ariz. 1994).

There is substantial overlap, in this regard, between the doctrine of "equitable mootness" and the conditions placed on § 1144 relief. In both cases, the principal concern is whether and to what extent it is feasible to unscramble the egg. But there are also differences. Unlike the ordinary appeal, a challenge under § 1144 requires proof of fraud, and the section is designed to preserve the integrity of the bankruptcy system. Ogden v. Ogden

Modulars, Inc. (In re Ogden Modulars, Inc.), 180 B.R. 544, 547 (Bankr. E.D. Mo. 1995). A court is understandably reluctant to give a free pass to a debtor that has committed fraud. Consequently, the refusal to revoke a confirmation order because of mootness does not foreclose other remedies, such as a damage action based on fraud. See S.N. Phelps & Co. v. Circle K Corp. (In re Circle K Corp.), 181 B.R. 457, 460 (Bankr. D. Ariz. 1995); Ogden Modulars, 180 B.R. at 547; cf. In re Newport Harbor Assocs., 589 F.2d 20, 24 (1st Cir. 1978)(decided under the Bankruptcy Act of 1898). In addition, § 1144 is primarily concerned with protecting innocent third parties who have relied on the confirmation order, and the debtor is rarely innocent; "equitable mootness" considers the effect of revocation on the debtor as well as the other parties in interest.

These differences raise a thorny but unanswered question – does the doctrine of "equitable mootness" have any role in a § 1144 proceeding? To put it differently, if the court can revoke the confirmation order and protect innocent third parties, can it nonetheless dismiss the complaint seeking revocation under the doctrine of "equitable mootness." To do so would seem to invoke equity to vary the express terms of the Bankruptcy Code. See Alan M. Ahart, The Limited Scope of Implied Powers of a Bankruptcy Judge: a Statutory Court of Bankruptcy, Not a Court of Equity, 79

9

Am. Bankr. L. J. 1, 35 (Winter 2005).

It is unnecessary to answer the question in this case because the Complaint fails under either test. Although the Plan is deceptively simple to describe, it would be exceedingly difficult to unwind and impossible to protect innocent third parties. Under the Plan, Trico distributed new common stock to the Noteholders, as well as warrants to the existing shareholders. The plan was substantially consummated in March 2005. Trico subsequently offered and sold over 4.2 million additional shares of common stock in October 2005. The common stock is publically traded.

Those who traded presumably did so based on available public information. That information depicted a substantially de-leveraged Trico. For example, Trico's Form 10-Q for the period ended March 31, 2005[3] showed post-confirmation liabilities of approximately $265 million less than its pre-confirmation liabilities. As a consequence, the ratio of liabilities to equity declined from 8:1 (pre-confirmation) to 2:1 (post-confirmation). The investing public plainly considers Trico to be a solvent corporation; its common stock is currently trading at between $26 and $28 per share. Revocation would retroactively alter their

---

[3] A copy of the Form 10-Q is annexed to the Declaration of Joseph P. Garland, dated Dec. 12, 2005, as Exhibit 1 (See ECF Doc. # 12.)

financial assumptions, and possibly render the common stock valueless.

In fact, revocation would convert some unsuspecting shareholders into Noteholders. Revocation of the confirmation order would cancel the stock received by the Noteholders, and reinstate their $275 million in claims. Presumably, some of the New TMS Common Stock distributed under the Plan has been resold in the marketplace. The purchasers were never involved in the Trico bankruptcy, and did not receive notice of these proceedings, but revocation would transform them into creditors holding reinstated Notes. While the revocation of the confirmation order would not affect the nature of the securities issued through the subsequent offering, that common stock would reflect, as noted, equity in a materially different – and possibly insolvent – company.

Salsberg has not suggested how a revocation order could protect the investing public other than to state that the harm "would likely be minimal," and "could easily be reimbursed without diminishing the value of Trico." (Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss, dated Dec. 12, 2005, at ¶ 12)("Plaintiffs' Memo")(ECF Doc. # 11.)[4]  To the contrary, the

---

[4] Salsberg also hypothesized that the benefits of a new or modified plan, centered on the utilization of $80 million in net operating losses (present value), "would be much greater than any cost associated with compensating for third-party reliance and any other revocation-

11

revocation of the confirmation order and Trico's discharge would cause substantial uncertainty that the Court cannot even begin to predict.

Salsberg's opposition also argues that those who relied in good faith on the confirmed Plan can be made whole by the payment of damages. (Plaintiffs' Memo, at ¶ 12.) The same can be said for Salsberg. They essentially claim that Turbidy and Trico committed a fraud on the Court, and they suffered damages as a result. Since Salsberg are the only parties seeking to revoke the confirmation order, it would be more practical to leave the confirmation order intact and let Salsberg seek their damages. Their damages – the difference between what they got under the Plan Support Agreement and what they were entitled to get under the absolute priority rule – are readily calculable assuming, without deciding, that a right of action exists.

In conclusion, Trico's motion for summary judgment is granted. Salsberg is granted leave to amend the Complaint, within 30 days of the date of this opinion, to seek other, appropriate relief, if any. If Salsberg does not file an amended complaint within that time, Trico may settle an order on notice dismissing this adversary

---

related costs." (Plaintiffs' Memo, at ¶¶ 11-12.) Aside from the speculative nature of the statement, Salsberg never sought the opportunity during the case to file the type of plan they now advocate.

proceeding.

So ordered.

Dated:    New York, New York
          January 6, 2006

                                          /s/ *Stuart M. Bernstein*
                                          STUART M. BERNSTEIN
                                   Chief United States Bankruptcy Judge

13