UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| TRICO MARINE SERVICES, INC., | : | Chapter 11 (Confirmed) |
| et al., | : | Case No.: 04-17985(SMB) |
| | : | |
| Debtors. | : | |

----------------------------------------------------------X

| | | |
|---|---|---|
| STEVEN SALSBERG and GLORIA | : | |
| SALSBERG, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| | : | |
| - against - | : | Adv. Proc. No. 05-2313 |
| | : | |
| TRICO MARINE SERVICES, INC., | : | |
| TRICO MARINE ASSETS, INC., | : | |
| TRICO MARINE OPERATORS, INC. | : | |
| and TRICO MARINE INTERNATIONAL, | : | |
| INC. | : | |
| | : | |
| Defendants. | : | |

----------------------------------------------------------X

## OPINION AND ORDER DENYING PLAINTIFFS'
## MOTION FOR LEAVE TO AMEND THE COMPLAINT

**A P P E A R A N C E S:**

KIRKLAND & ELLIS LLP
Attorneys for Defendant
Citigroup Center
153 East 53rd Street
New York, New York 10022-4675

      Matthew Solum, Esq.
      Peter Asplund, Esq.
         Of Counsel

STEVEN C. SALSBERG, ESQ.
Plaintiff Pro Se
205 West 88th St., #2D
New York, NY 10024

LAW OFFICE OF JOSEPH P. GARLAND
Attorney for Plaintiff Gloria Salsberg
275 Madison Ave., 11th Floor
New York, NY 10016

      Joseph P. Garland, Esq.
         Of Counsel

**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge:**

The plaintiffs, Steven Salsberg ("Steven") and Gloria Salsberg ("Gloria"), are former

shareholders of the debtor Trico Marine Services, Inc.   Their shares were cancelled under the

confirmed plan (the "Plan").   Contending that the confirmation was procured through the

perjurious testimony of Trevor Turbidy, the debtors' former chief financial officer and present

chief executive officer, the Salsbergs sought unsuccessfully to vacate the confirmation order.

They then filed a claim for damages against the debtors.  They now seek leave to amend their

complaint to assert a damage claim against Turbidy, arguing that his perjury was a fraud on the

Court.

Their proposed pleading is legally insufficient, and would not survive a motion to

dismiss.  Since the proposed amendment is futile, leave to amend is denied.

**BACKGROUND**

The background to this dispute is set forth in the Court's prior opinions reported at

Salsberg v. Trico Marine Servs., Inc. (In re Trico Marine Servs., Inc.), 337 B.R. 811 (Bankr.

S.D.N.Y. 2006)("Trico I") and Salsberg v. Trico Marine Servs., Inc. (In re Trico Marine Servs.,

Inc.), 343 B.R. 68 (Bankr. S.D.N.Y. 2006)("Trico II").  As this opinion focuses on the legal

sufficiency of the proposed Second Amended Complaint ("SAC"), I recount the material facts

alleged in that pleading, and assume that they are true.[1]

## A.      The Fraud

The debtors filed their chapter 11 petitions on December 21, 2004.  (SAC, ¶ 18.)  They

confirmed their pre-packaged Plan on or about January 19, 2005, and the Plan became effective

on March 15, 2005.  (Id., ¶ 16.)   At the time of the confirmation hearing and the effective date,

Steven owned 44,000 shares of common stock in Trico Marine Services, Inc.  (Id.)  Pursuant to

the Plan, Steven's common shares were cancelled, and he received the aggregate of 1188

warrants.  (See id.)  After the confirmation hearing, he transferred the aggregate of 87 warrants

to his mother, Gloria, together with the fraud claims asserted in this litigation.  (See id. ¶¶ 17, 59,

64.)

The gravamen of the Salsbergs' claims appear to center on two, related frauds pertaining

to the disclosure of the debtors' 2004 fourth quarter operating results.  The debtors' Disclosure

Statement, which was signed by the debtors' then-chief executive officer, Thomas Fairly, on

November 12, 2004, included certain financial information and projections.  (Id. ¶¶ 23-24.)  The

fourth quarter projections were based on the information available as of September 30, 2004.

(Id. ¶ 25.)  The Disclosure Statement projected fourth quarter revenues of $24.9 million.  (Id. ¶

28.)

---

[1]      A copy of the SAC is annexed as Exhibit 1 to the Affidavit of Joseph A. Garland, sworn to June 16, 2006
"Garland Affidavit")(ECF Doc. # 37.)  In addition to the SAC, the Court can also consider the January 19, 2005
transcript of the confirmation hearing ("Tr. 1/19"), part of which is annexed as Exhibit 3 to the Garland Affidavit.
The full transcript is filed in the case (04-17985) as document number 91.  The Salsbergs relied on and quoted
Turbidy's testimony in drafting the SAC, and his testimony, evidenced in the transcript, is integral to their claims.
See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am.
Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995).

By the time of the January 19, 2005 confirmation hearing, the fourth quarter had closed.

The debtors' actual revenue for the fourth quarter was $33.7 million, (id., ¶ 29), or 35% higher

than the projection in the Disclosure Statement.  (Id. ¶ 30.)  Turbidy nevertheless testified at the

confirmation hearing "without qualification albeit preliminarily" that the fourth quarter revenue

was fairly consistent with and not materially higher than the projected revenue.  (Id. ¶ 32.) [2]

Turbidy's testimony was false, and was made with knowledge of the falsity, or with reckless

disregard of the truth.  (SAC, ¶¶ 32, 38.)  Turbidy also personally benefited, because the value of

the stock options that he received increased, and his prominence and personal stature were

enhanced.  (Id. ¶ 39.)

Furthermore, the financial projections in the Disclosure Statement were misleading, even

if they were correct when they were made.  The financial projections were unrealistic, contained

---

[2]    The charge of fraud relates to the following testimony:

| | |
|---|---|
| THE COURT: | Do you recall whether your actual [experience] for the fourth quarter of 2004 was higher, lower or consistent with the projected results? |
| THE WITNESS: | In total [,] 2004 was consistent with our projections. |
| THE COURT: | Just the last quarter? |
| THE WITNESS: | It was fairly consistent, yes. It wasn't spot on dollar for dollar. |
| THE COURT: | It is higher or lower? |
| THE WITNESS: | I believe it was slightly higher. |
| THE COURT: | I'll take that answer they higher - they did better than they projected.  I understand their concern about disclosing in a court, particularly a preliminary analysis, but they're saying they did better. I think that answers your question. |

BY MR. SALSBERG:

| | |
|---|---|
| Q | How much better? |
| A | Not materially. |

(SAC, ¶ 32; accord Tr. 1/19, at 122-23.)

false information and used unreasonably false assumptions, all apparently connected to the

incorrect misstated fourth quarter operating results.  (Id. ¶ 42.)  Had the Court known that the

actual fourth quarter revenue was $33.7 million, it would not have relied on the financial

projections or any valuation based on those projections.  (Id.)

For the same reason, the valuation evidence presented at the confirmation hearing was

also flawed.  Richard Nejame, the debtors' valuation expert, did not use correct information,

because he relied on the erroneous projections.  (See id. ¶ 43.)  Had Turbidy testified truthfully,

his testimony would have impeached NeJame's testimony, and buttressed Steven's higher

valuation.  (Id. ¶ 45.)  Most importantly, the truthful testimony would have supported a finding

that the debtors were solvent.  (Id. ¶ 46.)

**B.    This Litigation**

The debtors commenced this lawsuit against the Trico debtors under 11 U.S.C. § 1144 to

revoke the January 21, 2005 confirmation order.  Treating the defendants' motion for judgment

on the pleadings as a motion for summary judgment, the Court dismissed the complaint in Trico

I.  In substance, the Court concluded that even if the plaintiffs could prove fraud, the Court could

not restore the pre-confirmation status quo or protect innocent parties, and accordingly, could not

vacate the confirmation order.  The Court nevertheless granted the plaintiffs leave to replead in

order to assert a damage claim.  In Trico II, the Court granted the plaintiffs' motion for

reargument, adhered to its original decision, and again granted leave to replead.

The plaintiffs then filed an Amended Complaint, (ECF Doc. # 33), demanding damages

from the debtor-defendants under 11 U.S.C. § 1144 and under the separate theory that they had

committed a "fraud on the court." The plaintiffs now seek leave to file the SAC for the purpose

of joining Turbidy as a defendant on the latter claim.[3] The SAC also drops Trico Marine

International, Inc. as a defendant. The defendants oppose the motion, contending that the

amendment is futile. In particular, they argue that the "fraud on the court" claim is legally

insufficient, and the claims against Turbidy were time-barred.[4]

The defendants and/or the Court also questioned each plaintiff's standing. The

defendants initially inquired whether Steven owned Trico common stock at the time of the

confirmation hearing. He has since provided evidence that he acquired 44,000 shares of Trico

common stock on January 14, 2005, prior to the confirmation hearing. Gloria, on the other hand,

may never have owned any Trico common stock. The SAC alleges that Steven transferred

warrants to Gloria, which were issued at the time that the shares were cancelled. In addition, the

assignment does not answer whether Gloria acquired Steven's in personam fraud claim. Cf.

Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank, 57 F.3d 146, 151 (2d

Cir 1995)(in absence of explicit assignment of fraud claim, assignor of contract claim may

rescind or sue for damages for fraud and deceit)(quoting Nearpark Realty Corp. v. City Investing

Co., 112 N.Y.S.2d 816, 817 (N.Y. Sup. Ct. 1952)); Fox v. Hirschfeld, 142 N.Y.S. 261, 263-64

(N.Y. App. Div. 1913)(assignor of real estate contract retained claims for rescission and fraud).

---

[3]   The plaintiffs have conceded that any claim against Turbidy based on 11 U.S.C. § 1144 would be time-barred. (Transcript of hearing, held Aug. 10, 2006, at 16-17) (ECF Doc. # 53.)

[4]   As already noted, the plaintiffs concede that the § 1144 damage claim against Turbidy is time-barred, and that claim will be dismissed. Thus, the proposed amendment is limited to the claim based on fraud on the court. The defendants acknowledge that there is no time limit governing such a claim; instead, they argue that it must be brought within a reasonable time. (See Defendants' Memorandum of Law in Opposition to Motion to Amend the Amended Complaint, dated July 10, 2006, at 14) (ECF Doc. # 44.) The timeliness of the amendment cannot be resolved as a matter of law, and hence, cannot be deemed futile on that basis.

## DISCUSSION

Rule 60(b) of the Federal Rules of Civil Procedure authorizes relief from a final order

based, among other grounds, on "fraud on the court."  It states, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a
> party's legal representative from a final judgment, order, or proceeding for the
> following reasons: . . . (3) fraud (whether heretofore denominated intrinsic or
> extrinsic), misrepresentation, or other misconduct of an adverse party. . . .  This
> rule does not limit the power of a court to entertain an independent action to
> relieve a party from a judgment, order, or proceeding, . . . or to set aside a
> judgment for fraud upon the court."

"[F]raud upon the court is limited to that species of fraud which does or attempts to,

defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial

machinery can not perform in the usual manner its impartial task of adjudging cases that are

presented for adjudication." Serzysko v. Chase Manhattan Bank, 461 F.2d 699, 702 (2d Cir.),

cert. denied, 409 U.S. 883 (1972); accord Kupferman v. Consolidated Research & Mfg. Corp.,

459 F. 2d 1072, 1078 (2d Cir. 1972); Martina Theatre Corp. v. Schine Chain Theatres, Inc., 278

F.2d 798, 801 (2d Cir. 1960).  The main question raised by the defendants' opposition is whether

Turbidy's perjury, without more, is sufficient to support a claim against him for "fraud on the

court."  The answer must begin with a consideration of the Supreme Court's decision in Hazel-

Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944).

There, the lawyers for Hartford-Empire ("Hartford") wrote an article, which was signed

by a supposed expert (Clarke), touting the revolutionary qualities of Hartford's product in order

to support its patent application. Id. at 240.  After the patent was granted, Hartford brought a

patent infringement action against Hazel-Atlas, which the district court dismissed. Id.  On

appeal, Hartford's lawyers directed the Third Circuit to the false article, and the appellate court

relied extensively on it in reversing the district court and remanding the case for trial.  Id.

Following remand, Hazel's investigators became suspicious and spoke to Clarke, who insisted

that he had written the favorable article.  Id. at 241-42.  Shortly thereafter, Hazel capitulated,

paid Hartford $1 million, and entered into a licensing agreement with Hartford.  Id. at 243.

When the Circuit Court later learned the "sordid" truth, it nonetheless declined to vacate

the earlier settlement.  According to the Supreme Court, the Court of Appeals gave three reasons.

First, the fraud was not newly discovered, i.e., Hazel had not been diligent.[5]  Second, the

spurious article was not the primary basis of the Third Circuit's reversal, i.e., the false article

was not material.  Third, the Court lacked the power to set aside the earlier decree because the

term of the Court that had issued the earlier decree had expired.  Id. at 243-44.

The Supreme Court reversed.  Initially, the Court disposed of the jurisdictional issue,

ruling that equity empowers a court, in appropriate circumstances, to set aside a judgment

rendered during an earlier term based upon after-discovered fraud.  Id. at 244.  The Court also

concluded that the parties' lack of diligence in discovering the fraud, though not to be condoned,

was insufficient to defeat the claim.  The underlying patent suit involved "issues of great

moment to the public," and alleged tampering with the administration of justice and public

institutions.  Id. at 246.  In addition, the article was material because Hartford's lawyers thought

it was, used it to persuade the courts below, and could not dispute its effectiveness.  Id. at 247.

---

[5]    The opinion of the Court of Appeals recounted at length what Hazel's attorneys knew about fraudulent
article by the time of the settlement, see Hartford-Empire Co. v. Hazel-Atlas Glass Co., 137 F.2d 764, 765-68 (3d
Cir. 1943), and concluded that "[n]ot possibly can the information as to the facts attending the publication of the
Clarke article be deemed to rate as after-discovered evidence so far as either Hazel-Atlas or Shawkee [Hazel's co-
defendant] is concerned."  Id. at 768.

Turning to the facts of the case, the Court described the egregious nature of Hartford's

scheme.  In the process, the Court distinguished Hazel's allegations from a simple charge of

perjury, which would be insufficient to support a claim for "fraud on the court":

> Every element of the fraud here disclosed demands the exercise of the historic
> power of equity to set aside fraudulently begotten judgments.  This is not simply a
> case of a judgment obtained with the aid of a witness who, on the basis of after-
> discovered evidence, is believed possibly to have been guilty of perjury.  Here,
> even if we consider nothing but Hartford's sworn admissions, we find a
> deliberately planned and carefully executed scheme to defraud not only the Patent
> Office but the Circuit Court of Appeals.  Cf. Marshall v. Holmes, supra.  Proof of
> the scheme, and of its complete success up to date, is conclusive.  Cf. United
> States v. Throckmorton, supra.  And no equities have intervened through transfer
> of the fraudulently procured patent or judgment to an innocent purchaser.  Cf.
> Ibid; Hopkins v. Hebard, 235 U.S. 287, 35 S. Ct. 26, 59 L. Ed. 232."

322 U.S. at 246 (emphasis added).

The Supreme Court's distinction between mere perjury and "fraud on the court" became

the basis for the decision in Gleason v. Jandrucko, 860 F.2d 556 (2d Cir. 1988).  In that case, the

plaintiff, a critic of local government, was arrested in connection with an armed robbery after

two witnesses supposedly picked his picture out of a "photopack," and indicated that he could be

a suspect.  Id. at 557.  The plaintiff was eventually released, and no charges were ever filed.  Id.

The plaintiff subsequently sued certain police officials and the towns for unlawful arrest.

 Id.  During pre-trial discovery, two police officers testified that one of the eyewitnesses to the

bank robbery identified the plaintiff with 100% certainty, while the other identified him with

80% certainty.  According to the officers, the witnesses were 90% certain that the plaintiff was

the robber after viewing him during a post-arrest line up.  Id. at 557-58.  After unsuccessful

cross-motions for summary judgment, the parties entered into a settlement, and the action was

dismissed.  Id. at 558.

The plaintiff subsequently learned that the police officers had perjured themselves during discovery.  The eyewitnesses provided the plaintiff with affidavits stating that at the time they viewed the photographs, they were not certain that the plaintiff was the robber.  In addition, the photographs were fuzzy, and when they viewed him in the line up, they were absolutely sure that he was not the robber.  Id.

The plaintiff then brought a second action to set aside the prior judgment on the ground that the settlement was procured through a fraud upon the court.  Id.  The district court dismissed the complaint, and the Second Circuit affirmed.  Synthesizing the teachings of Hazel-Atlas and its progeny, including Second Circuit law, the Court of Appeals ruled that perjury and non-disclosure, without more, are insufficient to sustain a claim for "fraud on the court":

> As we previously have made clear, the credibility and veracity of a witness at issue in an original proceeding cannot be later challenged by way of an independent action. See Serzysko, 461 F.2d at 702 & n. 2; see also Travelers Indemnity Co. v. Gore, 761 F.2d 1549, 1552 (11th Cir.1985).  After-discovered evidence of alleged perjury by a witness is simply not sufficient for a finding of "fraud upon the court."  Hazel-Atlas, 322 U.S. at 245, 64 S.Ct. at 1001; Serzysko, 461 F.2d at 702.  Similarly, allegations of nondisclosure during pretrial discovery do not constitute grounds for an independent action under Fed.R.Civ.P. 60(b).  See H.K. Porter Co. v. Goodyear Tire & Rubber Co., 536 F.2d 1115, 1118 (6th Cir.1976).  Absent the type of fraud which "subvert[s] the integrity of the court itself, or is … perpetrated by officers of the court," 7 Moore ¶ 60.33, at 360; see Serzysko, 461 F.2d at 702, the requisite interference with the judicial machinery cannot be established and an independent action for fraud on the court therefore will not lie. In short, neither perjury nor nondisclosure, by itself, amounts to anything more than fraud involving injury to a single litigant.

860 F.2d at 559-60 (emphasis added); accord Transaero, Inc. v. La Fuerza Area Boliviana, 24 F.3d 457, 460 (2d Cir. 1994), cert. denied, 520 U.S. 1240 (1997); New Card, Inc. v. Glenns, No. 00 Civ. 4756(RMB), 2004 WL 540417, at *3 n.4 (S.D.N.Y. March 18, 2004), aff'd, 137 Fed.

Appx. 384, 2005 WL 1331337 (2d Cir. 2005).

Applying these principles to the case before it, the Court of Appeals agreed with the

lower court that the plaintiff had failed to allege "fraud on the court."  Moreover, "an aggrieved

party seeking relief under the saving clause of Rule 60(b) still must be able to show that there

was no 'opportunity to have the ground now relied upon to set aside the judgment fully litigated

in the original action.'"  Id. at 560 (quoting Serzysko, 461 F.2d at 702 n. 2); accord Weldon v.

United States, 70 F.3d 1, 5 (2d Cir. 1995)("Only if Weldon had no opportunity to litigate the

allegations of fraud on the court could this action go forward."); cf. Leber-Krebs, Inc. v. Capitol

Records, 779 F.2d 895, 896-97 (2d Cir. 1985)(sustaining claim based on "fraud on the court"

where the defendant had submitted a false garnishee's statement in an earlier action that it did

not hold property of, or owe a debt to, the earlier defendant, and as a result of the false statement,

the district court denied the motion to confirm the attachment at a hearing that the garnishee did

not attend).  The plaintiff had the chance during the first lawsuit to challenge the police officers'

accounts of the eyewitness testimony, and could have deposed the eyewitnesses.  860 F.2d at

559, 560.

These principles foreclose the Salsbergs' claims against Turbidy based on "fraud on the

court."  First, the claims against Turbidy rest solely on Turbidy's alleged perjury at the

confirmation hearing, and the Salsbergs do not allege that an officer of the Court perpetrated the

fraud.  Second, the SAC fails to allege that Steven had no opportunity to demonstrate the falsity

of Turbidy's testimony.  Indeed, Steven raised the issue of the actual fourth quarter results

during his interrogation of Turbidy, who he called as his own witness, and had the chance to

expose his lies.  He was simply not prepared to meet Turbidy's allegedly false testimony.

It is true, in this regard, that these cases moved swiftly toward confirmation, and if Salsberg had more time, he <u>might</u> have had a better chance to unearth information useful in exposing Turbidy's alleged perjury.  But the same argument can be made in every case.  If it were the law, courts would constantly have to deal with independent actions collaterally attacking the testimony in a different case.  Moreover, Steven could have sought expedited discovery to take Turbidy's deposition prior to the confirmation hearing, or issued a trial subpoena directing Turbidy to produce the actual fourth quarter results at the confirmation hearing.

The foregoing is sufficient to dispose of the pending motion, and it is therefore unnecessary to address the other arguments raised by counsel.  The motion for leave to amend is denied, and the parties are directed to schedule a conference to consider further proceedings aimed at resolving the question of Gloria's standing and scheduling a trial on the merits.

So ordered.

Dated: New York, New York
       November 22, 2006


                              /s/ *Stuart M. Bernstein*
                              STUART M. BERNSTEIN
                         Chief United States Bankruptcy Judge